**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

ABIGAIL M. LEGROW
JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

December 13, 2021

Brian M. Rostocki, Esq.
Nicholas R. Rodriguez, Esq.
Alexandria P. Murphy, Esq.
John T. McDonald, Esq.
Reed Smith LLP
1201 N. Market Street, Suite 1500
Wilmington, DE 19801

Patricia A. Winston, Esq.
Kirsten A. Zeberkiewicz, Esq.
Barnaby Grzaslewicz, Esq.
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

RE: *Axogen Corp. v. Integra LifeSciences Corp.*
C.A. No. N21C-04-202 AML CCLD

Dear Counsel:

After considering Axogen Corporation's Motion to Dismiss Integra LifeScience Corporation's Counterclaims and the parties' briefs and arguments with respect to that motion, I have concluded that the motion should be denied without prejudice to Axogen raising its arguments at a later date based upon a more complete factual record. For the reasons explained briefly below, I agree with Axogen that some or all of Integra's claims likely are barred by the *Noerr-Pennington* doctrine or because Integra cannot establish any non-protected action by Axogen that interfered with Integra's contractual or prospective business relationships. At this stage of proceedings, however, the Court must assume the truth of Integra's allegations *and* draw inferences in its favor. Under Delaware's minimal pleading standard, Integra's claims survive, for now.

## FACTUAL BACKGROUND

I will not belabor the point reciting in detail the facts alleged in Axogen's complaint or Integra's counterclaims. Briefly summarized, the parties are competitors in the development and sale of medical technology.[1] Integra planned to develop a nerve allograft device to compete with a similar device developed by Axogen.[2] To that end, Integra formed a Nerve Advisory Board ("NAB") tasked with analyzing the market, developing trial protocols, and guiding research.[3] The members of the NAB included Dr. Kyle Eberlin and Dr. Ian Valerio.[4] Both doctors were subject to noncompete agreements with Axogen and Integra through prior consulting work they performed for each entity.[5]

After learning about Integra's plans to develop a competing device and intent to utilize Drs. Eberlin and Valerio to assist in that endeavor, Axogen brought an action in the Court of Chancery seeking to enjoin the doctors' employment with Integra, among other things.[6] The doctors ultimately resigned from the NAB.[7] The parties to the Chancery proceeding entered into a stipulation regarding the interim relief Axogen sought, after which the action was transferred to this Court pursuant to 10 *Del. C.* § 1902.[8]

---

[1] *See* Counterclaims at ¶¶ 10–21 (D.I. 3).
[2] *See id.* at ¶¶ 18–21.
[3] *See id.* at ¶¶ 55–59.
[4] *Id.*
[5] *See id.* at ¶¶ 22–54 (describing Integra's history with the doctors); Complaint at ¶¶ 35–43, 54–61, 77–84 (describing Axogen's history with the doctors) (D.I. 1).
[6] Counterclaims at ¶ 64.
[7] *Id.* at ¶ 65.
[8] Integra's Answering Br. in Opp. to Axogen's Mot. to Dismiss at 13–14 (D.I. 14); *see also* Complaint, Ex. 1 (Transfer Order).

Axogen filed its Complaint in this Court in April 2021. Axogen's five claims center on Integra's alleged conduct in violating or causing Axogen's consultants and employees to violate their contractual relationships with Axogen.[9]

Integra brought three counterclaims. First, Integra alleges tortious interference with contract based on Axogen's "induc[ing] [Eberlin and Valerio] to breach their contractual obligations to Integra, including the obligations not to disclose confidential information, not to compete with Integra, and continuing to service Integra."[10] Second, Interga alleges tortious interference with a prospective economic advantage, claiming Axogen undermined Integra's future business relationships with Eberlin and Valerio.[11] Third, Integra alleges unfair competition based on Axogen's (1) "improperly seeking to maintain its monopoly in the nerve allograft market," (2) "filing and maintaining this litigation in which Axogen asserts claims motivated by its desire to impose a collateral, anticompetitive injury rather than to obtain a justifiable legal remedy," (3) "obtain[ing] Integra's confidential and proprietary information in direct competition with Integra in an effort to obtain an improper advantage in the market place," and (4) "causing Drs. Valerio and Eberlin to resign from their positions."[12]

Axogen moved to dismiss Integra's counterclaims under Rule 12(b)(6) on July 7, 2021.[13] The Court heard argument on October 15, 2021 and took the motion under advisement.[14]

---

[9] *See* Complaint at ¶¶ 283–334.
[10] *See* Counterclaims at ¶¶ 70–77.
[11] *See id.* at ¶¶ 78–85.
[12] *See id.* at ¶¶ 86–90.
[13] Axogen's Motion to Dismiss (D.I. 8).
[14] D.I. 25; *see also* D.I. 26 (Hearing Transcript).

## ANALYSIS

Dismissal is appropriate under Rule 12(b)(6) if the complaint fails to state a claim upon which relief can be granted.[15]  In considering a motion to dismiss, the Court must: "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) [not dismiss the claim] unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[16]

Delaware's pleading standard is "minimal."[17]  But "the benefits of liberal construction afforded [a plaintiff] do not extend to 'conclusory allegations that lack specific supporting factual allegations.'"[18]  Accordingly, the Court will dismiss a complaint if the plaintiff fails to plead specific allegations supporting each element of a claim or if no reasonable interpretation of the alleged facts reveals a remediable injury.[19]

In support of its motion to dismiss, Axogen advances two main arguments. First, Axogen contends Integra fails to state a claim as to any of its three counterclaims because it has not adequately pleaded one or more of the requisite elements for those claims.  Second, Axogen argues the *Noerr-Pennington* doctrine

---

[15] *See* Del. Super. Ct. Civ. R. 12(b)(6).

[16] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

[17] *Id.* at 536 (citation omitted).

[18] *Surf's Up Legacy Partners, LLC v. Virgin Fest, LLC*, 2021 WL 117036, at *6 (Del. Super. Ct. Jan. 13, 2021) (quoting *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998)).

[19] *Surf's Up*, 2021 WL 117036, at *6 (quotation marks and citations omitted); *see Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001); *see also Price v. E.I. DuPont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011) (observing that a court need not draw "unreasonable inferences in favor of the non-moving party"), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 185 A.3d 1255, 1277 (Del. 2018).

completely bars Integra's claims. That doctrine precludes a finding of liability for damage caused by inducing, *inter alia*, judicial action.

### A. Integra adequately pleads it claims.

#### 1. Count I – Tortious Interference with Contract

To state a claim for tortious interference with contract, a plaintiff must plead (1) the existence of a contract, (2) about which the defendant knew, (3) an intentional and unjustified act that was a significant factor in causing the breach, and (4) damages.[20] Axogen argues Integra fails to plead breach of contract and that Axogen acted with intention and without justification in a way that caused a breach.[21] The Court disagrees.

Integra entered into a Master Service Agreement ("MSA") with each doctor. The MSAs contained a non-compete agreement and several Statements of Work that covered various time periods (individually, a "SOW"). Axogen argues both non-competes have expired because a new SOW was not entered when the preceding SOW expired.[22] But Integra alleges it entered into several SOWs with each doctor and each expressly referenced the MSA.[23] Moreover, the descriptions of the doctors' responsibilities outlined in the SOWs were sufficiently broad to encompass work related to nerve products.[24] At this stage of the proceedings, Integra has presented a reasonable interpretation of the contracts and adequately has alleged that Integra

---

[20] *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013).

[21] Axogen's Opening Br. in Supp. of Mot. to Dismiss at 17.

[22] Specifically, Axogen argues Valerio's MSA expired on November 3, 2016 and his non-compete expired one year later, on November 3 2017. *Id.* at 14–15. Axogen similarly argues Eberlin's MSA expired on May 12, 2019 and his non-compete expired on May 20, 2020. *Id.* at 16.

[23] *See* Counterclaims at ¶¶ 22–54.

[24] *See id.* at ¶¶ 37, 53.

caused the doctors to breach the contracts by refusing to do any additional work for Integra relating to nerve repair products.

Whether Axogen's conduct was improper or unjustified is a fact-intensive question that cannot be resolved on a motion to dismiss.[25] For now, it sufficient that Integra alleges facts from which the Court reasonably may infer that Axogen sought to cause the doctors to breach their contracts with Integra by obtaining from them Integra's confidential information in an effort to gain improper competitive advantage.

### 2. Count II – Tortious Interference with Prospective Economic Advantage

To state a claim for tortious interference with prospective economic advantage, a plaintiff must plead (1) the existence of a reasonably probable business opportunity, (2) intentional interference by the defendant with that opportunity, (3) proximate causation, and (4) damages.[26] Axogen contends Integra has not adequately pleaded the first and second elements.[27] Again, the Court disagrees.

Integra adequately alleges the reasonable probability of future business opportunities with both doctors and with other individuals that Integra was

---

[25] *See Bandera Master Fund LP v. Boardwalk Pipeline Partners, LP*, at *25–27, 2019 WL 4927053 (Del. Ch. Oct. 7, 2019) (denying motion to dismiss because justification is a fact-intensive inquiry not amenable to resolution at the pleading stage); *WaveDivision Holdings, LLC v. Highland Cap. Mgmt. L.P.*, 2010 WL 1267126, *7 (Del. Super. Ct. Mar. 31, 2010) (same); *Grunstein v. Silva*, 2009 WL 4698541, at *16 (Del. Ch. Dec. 8, 2009) ("The question of whether an action is improper is a factual determination not readily amenable to assessment by way of a motion to dismiss.").

[26] *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122 (Del. Ch. 2017) (citing *DeBonaventura v. Nationwide Mut. Ins. Co.*, 419 A.2d 942, 947 (Del. Ch. 1980)).

[27] Axogen's Opening Br. in Supp. of Mot. to Dismiss at 24–26.

considering for inclusion in the NAB.[28]  Contrary to Axogen's argument, Integra's allegations are sufficiently definite to survive dismissal.[29]  "[Although] the plaintiff must ultimately prove the reasonable probability of a business opportunity, the 'existence of such a business expectancy is a question of fact not suitable for resolution [on a motion to dismiss].'"[30]

Furthermore, Integra adequately avers Axogen interfered with those business opportunities through its allegedly defamatory statements regarding Integra and its threat to sue the doctors and other others.[31]  Again, whether this conduct was justified is a fact-intensive question unfit for resolution at the pleading stage.[32]

### 3.  Count III – Unfair Competition

To state a claim for unfair competition, a plaintiff must allege "a reasonable expectancy of entering a valid business relationship, with which the defendant wrongfully interferes, and thereby defeats the plaintiff's legitimate expectancy and

---

[28] *See id.* at ¶¶ 23, 26, 39, 42, 55–59 (describing Integra's repeated business relationships with the doctors over several years); *see also id.* at ¶¶ 22, 55, 80–81 (describing Integra's reliance on consultants and plans to add additional consultants to the NAB).

[29] *See Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at * 7–8 (Del. Ch. Jan. 20, 2009) (counterclaim plaintiff adequately alleged reasonable probability of business opportunity even though it did not specifically name the affected customers); *EIS, Inc. v. WOW Tech Int'l GmbH*, 2020 WL 7027528, at *8 (D. Del. Nov. 30, 2020) (rejecting argument that the plaintiff's failure to identify a lost customer was a basis for dismissal).

[30] *Chapter 7 Tr. Constantino Flores v. Strauss Water Ltd.*, 2016 WL 5243950, at *12 (Del. Ch. Sept. 22, 2016) (quoting *Gill v. Del. Park, LLC*, 294 F. Supp. 2d 638, 646 (D. Del. 2003)).

[31] *See* Counterclaims at ¶¶ 1–9, 62–69.

[32] *Elder v. El Di, Inc.*, 1997 WL 364049, at *14 (Del. Super. Ct. Apr. 24, 1997) ("[W]hether [defendant's] alleged interference was justified or privileged is an issue of fact that cannot be resolved on a motion under Rule 12(b)(6)"); *Hursey Porter & Assocs. v. Bounds*, 1994 WL 762670, at *16 (Del. Super. Ct. Dec. 2, 1994) (noting "privilege to compete" has the same meaning as "justification").

causes him harm."[33] "The essential distinction between legitimate market participation and 'unfair competition' is 'unfair action' by a defendant that prevents 'the plaintiff from legitimately earning revenue.'"[34] Here, Axogen contends Integra does not sufficiently plead a reasonable expectancy of entering into a valid business relationship or that Axogen acted wrongfully.[35]

As previously stated, Integra adequately pleads it had a reasonable expectancy of entering a valid business relationship. And Integra adequately pleads wrongful interference by Axogen. Unfair competition "includes fraud, intimidation, or disparagement,"[36] and that is what Integra alleges.[37] Consequently, Integra has stated a claim for unfair competition.

## B. The Court cannot conclude whether *Noerr-Pennington* bars some or all of Integra's claims without further development of the facts.

Alternatively, Axogen contends all Integra's counterclaims should be dismissed because they violate the *Noerr-Pennington* doctrine. "*Noerr-Pennington* provides broad immunity from liability to those who petition the government,

---

[33] *Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at *5 (Del. Ch. Jan. 20, 2009) (internal citations omitted).

[34] *GWO Litig. Tr. v. Sprint Sols., Inc.*, 2018 WL 5309477, at *12 (Del. Super. Ct. Oct. 25, 2018) (quoting *Triton Const. Co. v. E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at *19 (Del. Ch. May 18, 2009)).

[35] Axogen's Opening Br. in Supp. of Mot. to Dismiss at 27.

[36] *Int'l Bus. Machines Corp. v. Comdisco, Inc.*, 1993 WL 259102, at *21 (Del. Super. Ct. June 30, 1993) (internal quotations omitted); *see also NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 34 (Del. Ch. 2009) ("[M]isrepresentations of fact 'are not legitimate vehicles of competition.'") (internal citations omitted).

[37] *See* Counterclaims ¶¶ 1–9, 62–65, 68, 87 (describing Axogen's alleged wrongful conduct, including making false statements about Integra and interfering in Integra's relationship with the doctors).

including administrative agencies and courts, for redress of their grievances."[38] "Immunity under the *Noerr-Pennington* doctrine extends to business torts due to the doctrine's foundation on a First Amendment right of petition."[39] The doctrine is not absolute, and it can be overcome by application of the "sham exception," which applies if the lawsuit is "a mere sham to cover what is actually nothing more than an attempt to interfere directly with business relationships of a competitor."[40] To determine whether the sham exception applies, the court first must determine whether the lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."[41]

Axogen correctly and persuasively argues that Integra's counterclaims are based upon, and inextricably intertwined with, the litigation Axogen filed in the Court of Chancery. Although Integra argues in passing that the "sham exception" may apply, that argument is unpersuasive given that the Court of Chancery entered an injunction granting Axogen at least some of the relief sought. Although the parties stipulated to the injunction, there is no reasonable basis in the Counterclaims' allegations to conclude the sham exception applies when Axogen achieved success on the merits of its claim.

The parameters of *Noerr-Pennington* are not endless, however, and the counterclaims rely at least in part on conduct that may not fall within the doctrine.

---

[38] *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 178 (3d Cir. 2015) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)).

[39] *Nuance Commc'ns, Inc. v. MModal LLC*, 2018 WL 6804488, *2 (D. Del. Dec. 27, 2018) (internal citations omitted), *report and recommendation adopted*, 2019 WL 181322 (D. Del. Jan. 11, 2019).

[40] *Id.* at *3 (citing *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961)).

[41] *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993).

For example, Integra alleges Axogen threatened litigation against the doctors and other Integra employees, consultants, or prospective consultants.[42] Integra also alleges Axogen made defamatory statements outside the litigation about Integra and its products, including statements to current and prospective employees and consultants.[43] There is, at a minimum, a factual issue as to when those statements were made, to whom, and for what purpose. Axogen has a persuasive argument that statements made in the Court of Chancery litigation, even if defamatory, fall within *Noerr-Pennington*. The mere fact that the statements were made in the litigation, however, would not protect similar statements if they also were made outside of, and wholly unrelated to, the litigation. Moreover, although there is some precedent to support the idea that threatened litigation may fall within *Noerr-Pennington*,[44] the parties have not explored adequately the scope of that threatened litigation protection.

Finally, there is an unresolved issue regarding the choice of law between Delaware and Florida, which was not raised until oral argument.[45] If Florida law applies, it is possible *Noerr-Pennington* does not afford Axogen any protection based on the law in that state.[46] The Court is not prepared to rule on this issue until it has been briefed properly.

---

[42] Counterclaims at ¶¶ 2–6, 80–84.

[43] *Id.* at ¶¶ 2, 62, 68.

[44] See *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, 2011 WL 678707, at *2 (D. Del. Feb. 18, 2011) (applying *Noerr-Pennington* to counterclaims based partially on a threat of litigation); *see also Nuance*, 2018 WL 6804488, at *4–5 (analyzing *Magnetar*).

[45] *See* Hearing Transcript at 28:3–29:16; 39:18–40:12.

[46] *See Bobcat N. Am., LLC v. Inland Waste Holdings, LLC*, 2019 WL 1877400, at *15 (Del. Super. Ct. Apr. 26, 2019) (explaining how "Florida law simply has not adopted—in fact, it has somewhat resisted—the *Noerr-Pennington* doctrine").

## CONCLUSION

For the foregoing reasons, Axogen's motion to dismiss Integra's counterclaims is denied without prejudice to Axogen raising those arguments in a summary judgment motion after the completion of relevant discovery.

**IT IS SO ORDERED.**

*/s/ Abigail M. LeGrow*
Abigail M. LeGrow, Judge

Original to Prothonotary
cc: All Counsel via File and Serve